[Civ. No. 6226. First Appellate District, Division One.—February 15, 1928.]

THE BANK OF ST. HELENA (a Corporation), Appellant, v. LILIENTHAL–BRAYTON CO. (a Copartnership) et al., Respondents.

Clarence N. Riggins for Appellant.

Thomas, Beedy, Presley & Paramore for Respondents.

PARKER, J., *pro tem.*—Appeal from judgment in favor of defendants entered pursuant to a verdict of a jury, which verdict was directed by the court upon the theory that plaintiff had failed to present facts sufficient to sustain its cause of action.

The action was one to recover damages resulting to plaintiff from and through the fraud of defendants, and a narrative of the facts may be here given.

The plaintiff is a banking corporation with its place of business at St. Helena in Napa County, California. The defendants as partners are engaged in a general brokerage business, consisting in part in the underwriting and sale of bonds, notes and other investment securities. During the month of January, 1921, the defendants offered for sale to the general public certain mortgage serial notes described as T. A. Tomasini notes. A circular descriptive of said notes was prepared and circulated throughout the state. The circular described the notes and the security behind them. Without detailing the representations of the circular

it will suffice to say that the notes were represented as being abundantly secured, and held out as an unusually sound investment, approved and certified by the superintendent of banks as a legal investment for savings banks in California. For the purposes hereof it may be admitted that the contents of the circular were false and fraudulent, and designed to induce prospective investors to part with their funds in the purchase of the securities. The record herein discloses that on the twenty-first day of January, 1921, plaintiff banking corporation came into possession of one of the circulars through a firm of bond and security salesmen other than defendants. On the same day plaintiff bank, through its president and cashier, purchased Tomasini notes to the amount of ten thousand dollars. Thereafter the security failing to a great extent, the notes became correspondingly diminished in value, and the present action results, plaintiff claiming that it was induced to buy said securities by and through the wilfully false representations of defendants.

The answer of defendants put in issue all of the material allegations of plaintiff's complaint and a trial was had. The trial court directed a verdict for defendants on the ground the plaintiff had failed to prove that it had been at all influenced by the circular or any representation made by defendants, or that said circular had ever been read by plaintiff or any of its officers before the purchase of the securities. This is the one point involved here.

The trial court held that there was no direct evidence showing that plaintiff or any of its officers had ever seen and read the circular before the purchase of the bonds in question.

Appellant here concedes, as indeed it must, that in the absence of knowledge of the contents of the circular on the part of plaintiff through acting officers no recovery can be had. We therefore examine the record for any evidence on this point which will indicate the fact of knowledge or any fact or facts from which a fair inference thereof may be drawn.

At the time of trial the president of the bank had died. However, there are no facts that would indicate that he had any knowledge of the transaction or the circular.

The cashier of the bank had died before trial, but plaintiff had secured his deposition, and the same was used at the hearing below. It appears that the negotiations leading up to the purchase of the Tomasini notes by plaintiff were carried on by one Frank Pellet on behalf of the bank. All of the facts connected therewith were within his knowledge, and the fraud operating upon the corporation became effectual, if at all, through its influence upon Pellet the individual. On January 21 the bank received a letter from a firm of brokers, other than defendants, calling the attention of the bank to the Tomasini notes as a good investment, and stating in the letter that the circular was inclosed. No one seems to remember whether the circular was or was not in fact inclosed. As far as the direct testimony goes the cashier Pellet testified that he had no recollection of the circular accompanying the letter. The letter itself was commendatory of the Tomasini notes, and called attention to the fact that the issue had the approval of the state superintendent of banks as a legal investment for savings banks. In fact, this letter itself was stronger than the circular prepared by defendants. Upon receipt of this letter Pellet telephoned the brokers at San Francisco and, following the telephone communication, plaintiff bank placed its order for the purchase of the bonds. There is not a single word of evidence that Pellet or anyone else connected with plaintiff bank ever read the circular. The testimony of Pellet is to this effect: "I do not recall the circumstances at all, only as the letters show." The whole claim of appellant is based upon the fact that the order for the notes was placed on January 21, 1921, and that the circular was received in the bank on that date. There is nothing to show whether the circular and the letter referred to came together, or whether the circular came first or the letter. Further, there is not one word of evidence to indicate that the purchase of the bonds was made after the receipt of the circular. Appellant rests on the bare record, and then builds up its case by inference. It is contended that we must presume from the fact that the circular bears a receipt stamp indicating its receipt by the bank on January 21, 1921, that receipt by the bank was as of that date. We accept that. Then appellant argues that we must infer that the circular came at

a time prior to the purchase, and that the circular was read by some officer of the bank, who acted thereafter on the information in the circular contained. The strain of inference exhausts itself in the face of the testimony of the cashier, the one human agency involved in the purchase, to the effect that he does not recall anything about the circular. It is passing strange that one can be induced to part with his money by fraudulent representations of another without knowing that it was these representations that induced him. Pellet, the cashier, was a man who had been in the banking business for many years, and a man familiar with investments and banking. If he had read the circular he certainly would have known it; and the fact that he would not testify that he had showed clearly that he was not of the impression that his act of purchase was in anywise affected by the circular statements. As hereinbefore set forth, the only direct fact we have in the record is that a copy of this circular was in possession of the bank on the same date that it purchased the notes. From that fact we are called upon to presume or infer the remaining facts necessary to plaintiff's recovery. If we could infer that the circular was received before the purchase, and then infer further that the circular was read before the purchase, we would be beyond the main difficulties, and the foundation would be sufficient to conclude a reliance upon the statements in the circular contained. The stress of appellant's argument is that proof of the representations permits the inference that reliance was placed thereon. We can agree with appellant to this extent.

Where a person ignorant of the real facts and having no ready means of information enters into a transaction as to the subject matter *of which representations have been made* which are material, the law will presume as a matter of fact that he relied upon them (27 Cor. Jur., p. 49, sec. 179). Section 206 same volume, Corpus Juris, says: "While plaintiff must show that the false representations set out induced him to act to his prejudice, the fact of reliance may be inferred from other facts proved. It does not require strong proof to establish that a person complaining of fraud was influenced by the false representations."

■ This general doctrine is upheld by our supreme court in the case of *Hunter* v. *McKenzie,* 197 Cal. 185 [239 Pac. 1090]. But by no stretch of the authorities or the language employed can it be said that the presumption works backward. It cannot be held or even seriously argued that proof that one has been defrauded supports the presumption that he was misled by representations never made to him. In *Nash* v. *Rosesteel,* 7 Cal. App. 504 [94 Pac. 850], it is said: "Plaintiff had never seen the inventory, nor was he informed of what it purported to contain. Hence, admitting the truth of his contention (that a false inventory was prepared) he could not have been misled or deceived by such document." ■ The party complaining must be deceived by the untrue statement; otherwise there can be no reliance. And there can be no reliance on statements which do not come to the knowledge of a contracting party until after he has consummated the transaction (12 Cal. Jur. 751).

In the case of *Ward* v. *Richmond,* 193 App. Div. 727 [184 N. Y. Supp. 508], the court says: "Plaintiff testified that he saw these prospectuses and that some were laid on his desk, but he never discussed them with defendants. He further testified that he relied upon the representations therein contained. But he nowhere testifies that he saw, read or received the prospectus before he bought the stock from defendants. As the representations claimed to have been relied on, and proved to be false, were contained in the printed prospectus, it would be well upon a new trial to establish the fact as to when plaintiff actually read the prospectus, whether before or after he parted with money for the stock."

In 26 Corpus Juris, at page 1140, it is said: "Obviously there can be no recovery where it was impossible for complainant to have relied on the representations, because they had not been made or communicated to him at the time of the transaction."

■ The entire case presented here may be thus illustrated: A purchases stock or bonds in a corporation. After purchase he discovers that he has been defrauded. He then goes to B and says: "I purchased stock in the Hope More Co. On the day I purchased the stock I received a cir-

cular issued by you with the idea of inducing people to buy the stock. This circular of yours contained statements knowingly and wilfully false and intended to mislead people to their disadvantage and to your gain. I do not know if I ever read the circular before I bought the stock and cannot say that I did. Nevertheless, I have a cause of action against you for the loss to me by reason of my purchase of the stock, based on these representations." From the authorities hereinbefore cited and as a matter of law too plain for further discussion it is apparent that A could not recover. Plaintiff here is similarly situated.

Judgment affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 16, 1928, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 12, 1928.

All the Justices concurred.