**In re GREAT SOUTHERN LIFE INSURANCE COMPANY SALES PRACTICES LITIGATION.**

MDL No. 1214.
Nos. 3–98–CV–1249–X, 3–98–CV–1617–X to 3–98–CV–1619–X.

United States District Court,
N.D. Texas,
Dallas Division.

March 14, 2000.

213

Melvyn I. Weiss, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, Ira A. Schochet, Goodkind, Labaton, Rudoff & Sucharow, New York City, Timothy G. Blood, Sharon T. Maier, Leslie E. Hurst, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, Peter Harold Rachman, Emily Cornelia Komlossy, Goodkind, Labaton, Rudoff & Sucharow, Fort Lauderdale, FL, Stephen L.

Hubbard, Robert W. Biederman, Hubbard & Biederman, Dallas, TX, for plaintiff.

Edwin R. DeYoung, Locke, Liddell & Sapp, Dallas, TX, Wendy Susan Leavitt, Joel B. Ronkin, Steel, Hector & Davis, Miami, FL, Jobeth Halper, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, David Brostein, Bernstein & Chackman, PA, Hollywood, FL, for defendants.

## MEMORANDUM OPINION AND ORDER

KENDALL, District Judge.

Before the Court are Plaintiffs' Motion for Class Certification, filed March 17, 1999, Defendant's Response filed on May 3, 1999, Plaintiffs' Reply filed June 11, 1999, Defendant's Surreply filed on July 12, 1999 and Plaintiffs' Reply to Surreply filed on July 19, 1999. Pursuant to FED.R.CIV.P. 23 and Local Rule 23.2, Plaintiffs seek to certify a class consisting of:

> All persons or entities who have or had at the time of termination an ownership interest in excess interest whole life and/or universal life insurance policies (the "Policies") issued by Great Southern from and after January 1, 1982 through December 31, 1997 (the "Class Period"). Excluded from the class are the defendants, their officers, directors and controlling persons.

For the reasons set forth below, Plaintiffs' Motion for Class Certification is hereby GRANTED and the class defined above is CERTIFIED.

## BACKGROUND

From 1982 to 1997, Great Southern Life Insurance Company marketed and sold so-called "vanishing premium" policies on a nationwide basis. These policies, both whole life and universal life, are complex interest sensitive devices. The performance of these policies depend, in large part, on a intricate number of variables. For example, changing interest, mortality, sales, and actuarial rates that each affect policy performance. Basically, the consumer paid premiums are first applied to the cost of insurance, commissions, sales, fees and other miscellaneous charges. The remaining funds accrue as the policy's cash value and are invested in various financial instruments and/or funds, theoretically generating an investment return which, if large enough, eventually makes the premium payments for the consumer. If all goes as planned, these policies should provide the consumer with what amounts to "free" insurance and an increasing investment vehicle.

The formulas for determining interest rates and actual insurance costs are contained in Great Southern's own insurance contracts.[1] During the Class period, Great Southern issued a number of different policies in different states, however the essential contract provisions at issue remained virtually unchanged.[2]

To sell these policies, Great Southern developed marketing materials and computer generated policy illustrations which were passed on to potential customers. Apparently, the computer generated documentation was Great Southern's primary marketing tool.[3] These materials were generated from the home office in Dallas. Great Southern's officers acknowledge that the policy illustrations were often based on inflated and not realistic performance models.[4] Plaintiffs' also allege that the insurance agents affiliated with Great Southern were kept in the dark as to the true actuarial tables, rates of return and other formulas used to determine Policy values and therefore could not properly advise potential purchasers.[5] Plaintiffs rely on these omissions as the foundation of their case on the merits as well as the case for class certification.

## STANDARD OF REVIEW

In order for the proposed class to be certified, Plaintiffs must satisfy the four requirements in FED.R.CIV.P. 23(a) and one of the requirements of FED.R.CIV.P. 23(b). *Shivangi v. Dean Witter Reynolds, Inc.*, 825 F.2d

---

1. *See* Blood Decl., Ex. 11, Ex. 12 (dealing with the relevant pages of Policies defining cost of insurance determination and credited interest determination).

2. *Id.*

3. *See* Carmine Perez Depo. at 23:23–24:13; Ira Rowe Depo. at 22:4–19; Ralph Williams Depo. at 80:14–81:12.

4. *See, e.g.,* Muller Depo. at 74:22–76:10.

5. Comp., at 9.

885, 891 (5th Cir.1987). The plaintiff bears the burden of showing that these prerequisites are met. See *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The requirements of Rule 23(a) are:

> (1) the class must be so numerous that joinder of all members is impracticable;
> (2) there must be questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties must be typical of the class; and
> (4) the representative parties must fairly and adequately protect the interests of the class.

FED.R.CIV.P. 23. Additionally, a plaintiff seeking class certification must show that at least one element of Rule 23(b) is satisfied. Rule 23(b) requires that Plaintiffs demonstrate that "questions of law or fact common to all members of the class predominate over any questions affecting only individual members," and that a class action is superior to other methods for adjudicating the controversy. FED.R.CIV.P. 23(b). Failure to establish any one of these elements requires denial of certification. *Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir.1976).

■ Although the Supreme Court holds that consumer protection issues are largely suited for class treatment, *Amchem Prods. v. Windsor*, 521 U.S. 591, 624, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), the trial court has broad discretion in ruling on a class certification motion. *Montelongo v. Meese*, 803 F.2d 1341, 1351 (5th Cir.1986), *cert. denied*, 481 U.S. 1048, 107 S.Ct. 2179, 95 L.Ed.2d 835 (1987). On such a motion, the court may only inquire into whether the requirements of FED.R.CIV.P. 23 have been satisfied, and may not consider whether plaintiffs have stated a cause of action or will prevail on the merits. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). However, a motion for class certification "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Coopers & Lybrand v. Livesay*, 437

U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (citations and internal quotation marks omitted). Although the court presumes the truth of Plaintiffs' allegations for the purposes of this opinion, *Miller v. Mackey, Int'l, Inc.*, 452 F.2d 424, 427–428 (5th Cir.1971) (holding that the for the purpose of class certification, the district court may not inquire into the merits or whether the plaintiff stated a cause of action), the Court's duty to ensure compliance with Rule 23 continues after certification, and the Court may decertify the class after the initial certification if it deems it appropriate. See FED.R.CIV.P. 23; *Hervey v. City of Little Rock*, 787 F.2d 1223, 1227 (8th Cir.1986).

## A. Rule 23(a)

### NUMEROSITY

■ The "numerosity" requirement imposes no absolute limitations. *General Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). A class action is a superior means for enabling "small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation." *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 560 (2d Cir.1968). Factors to be considered for this requirement include the number of potential class members, their geographic location, the potential value of each claim, the difficulties of bringing individual suits and other factors making the joinder of claims impracticable. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 560–61 (8th Cir.1982).

Great Southern markets its policies in 46 states.[6] It also sells its products in the District of Columbia.[7] Great Southern itself acknowledges that it sold over 280,000 policies during the proposed class period.[8] Given the geographic dispersion and the size of the potential class, it is clear that Plaintiffs meet the numerosity requirement of Rule 23.

### COMMONALITY/PREDOMINANCE

■ FED.R.CIV.P. 23(a)(2) requires that the Plaintiffs show "that there are questions

---

6. Blood Decl., Ex. 33.

7. *Id.*

8. Affidavit of Darrell L. McNutt, Dec. 3, 1997 at ¶ 5.

of law or fact common to the class." *Id.* Although the plaintiffs are not required to show that every question of law and fact is common to the entire class, they must show that the basis for their action affects all potential class members. *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir.1993). This requirement is, however, different than the requirements of Rule 23(b) which deals with whether common issues of law or fact will predominate over questions of law or fact affecting only individual members. Rule 23(a)(2) is satisfied when the legal question " 'linking the class members is substantially related to the resolution of the litigation.' " *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir.1982) (quoting *American Fin. Sys., Inc. v. Harlow*, 65 F.R.D. 94, 107 (D.Md.1974)), *cert. denied*, 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983). "[T]his requirement is easily met in most cases." I Newberg on Class Actions § 3.10 (3d ed.1992) (collecting cases).

■ Defendant contends that Plaintiffs cannot satisfy the commonality requirement because there was a lack of uniformity in the representations made to investors, and that all purchasers did not receive the same written materials. Further, Defendant contends that the Plaintiffs' case is predicated on alleged misrepresentations made by insurance agents at the point of sale.

Plaintiffs, of course, disagree. They contend that the alleged wrongs occurred in Great Southern's home office and that the wrongs consisted of omissions, not misrepresentations. Indeed, Plaintiffs allege that "defendants failed to inform policy owners of the pricing assumptions on which these products were based and the manner in which these assumptions were then manipulated by defendants," [9] which the Court accepts as valid for the purposes of this motion. *Miller*, 452 F.2d at 427–428. It is these alleged omissions which form the basis of Plaintiffs claims and "link" these class members together. Therefore, the Plaintiffs' motion for certification passes this test.

### TYPICALITY

■ Rule 23(a)(3) requires a showing that the claims or defenses of the representative

parties be typical of the claims or defenses of the class. At a minimum, typicality requires the proposed representative be "part of the class and 'possess the same interest and suffer the same injury' as the class members." *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (*quoting East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)); *Everitt v. City of Marshall*, 703 F.2d 207, 210 (5th Cir.1983), *cert. denied*, 464 U.S. 894, 104 S.Ct. 241, 78 L.Ed.2d 231 (1983). This does not mean, however, that the claims of the class representative and those of the class must be identical. *Phillips v. Joint Legislative Comm. on Performance and Expenditure Review of State of Miss.*, 637 F.2d 1014, 1024 (5th Cir.1981), *cert. denied*, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 483 (1982).

The court finds that Plaintiffs' claims are typical of the claims of the proposed class. The claims asserted here, if proved, all arise from Great Southern's failure to disclose accurate material to its agents and customers. Therefore, one claimant's allegations are the same as the next, that they had no opportunity to know the Policies' realistic return potential. That is to say, that their premium obligations may indeed not "vanish." As such, Plaintiffs' allegations easily meet the burden of typicality.

### ADEQUACY OF REPRESENTATION

■ Rule 23(a)(4) requires a finding that "the representative parties will fairly and adequately protect the interests of the class." FED.R.CIV.P. 23(a)(4). Adequate representation generally consists of two primary elements:

(1) It must appear that the representative party, through his attorneys, will vigorously prosecute the class claims, and

(2) There must be an absence of conflict or antagonism between the interests of the named plaintiff (in the subject matter of the litigation) and those of other members of the proposed class.

---

9. Consolidated 1st Amended Class Action Comp., at 25.

*Quigley v. Braniff Airways, Inc.*, 85 F.R.D. 74, 84 (N.D.Tex.1979). The determination that a party would adequately protect the interests of the class is a question of fact dependent on the circumstances of each case. *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 559 (5th Cir.1981). Here, Plaintiffs' proposed counsel is well versed in this exact type of litigation and has tried or settled any number of class action suits.[10] Additionally, the most obvious class members with a conflict, "the defendants, their officers, directors and controlling persons," who might own a policy of the type in dispute are excluded from the proposed class. The conflict must be "imminent and at the very heart of the suit," to withhold certification. *Kalodner v. Michaels Stores, Inc.*, 172 F.R.D. 200, 207 (N.D.Tex.1997). Here there is no such conflict and Plaintiffs satisfy this requirement.

Plaintiffs meet each requirement of Rule 23(a). The Court now turns to consider the requirements of Rule 23(b).

## B. The Requirements of Rule 23(b)

Rule 23(b) provides that an action may be maintained as a class action if all of the requirements of 23(a) are satisfied, and if the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, or that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Plaintiffs in this case assert a number of recovery theories. It is therefore necessary to evaluate each theory for common questions of law or fact. Under this part of the rule, the issues that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof. *Nichols v. Mobile Board of Realtors, Inc.*, 675 F.2d 671, 676 (5th Cir.1982).

### BREACH OF CONTRACT

Plaintiffs' first cause of action, breach of contract, satisfies the commonality requirement of Rule 23(b). Plaintiffs allege that Great Southern entered into contracts with its consumers and breached them by using valuation methods other than those expressly set forth in their own contracts. The key issue in determining the appropriateness of class action certification for this cause of action is: Which law controls? The Court is mindful of the Fifth Circuit's warning in *Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir.1996). In *Castano*, the Fifth Circuit noted that "[i]n a multi-state class action, variations in state law may swamp any common issues and defeat predominance." *Id.* at 741. "In order to make the findings required to certify a class action under Rule 23(b)(3) ... one must initially identify the substantive law issues which will control the outcome of the litigation." *Id.* (quoting *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 316 (5th Cir.1978)). "Given the plaintiffs' burden, a court cannot rely on assurances of counsel that any problems with predominance or superiority can be overcome." *Id.* at 742.

Fortunately, the legal analysis required here is choice of law, and not the synthesis of 46 state's laws. If, as Defendant urges, the laws of the forty-six states where policies were sold control, little purpose is served by combining the cases when they will in essence be tried separately anyway. However, if only the Texas law governs the contracts, as Plaintiffs contend, then the cases are ideal for certification as the presiding court will apply only one legal standard. Had the parties chosen to identify the governing law in their contract, they would have been free to do so subject to broad limitations. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex.1990). The parties however chose not to specify the governing law. Therefore, it falls to this court to determine what law governs.

This Court holds that Texas law governs the contracts at issue. Chief Justice Marshall referred to the "universal law ... that, in every forum, a contract is governed by the law with a view to which it was made." *Wayman v. Southard*, 23 U.S. (10 Wheat) 1, 48, 6 L.Ed. 253 (1825). The Chief Justice reflected the "most basic policy of contract law, which is the protection of the justified expectations of the parties." *DeSantis*, 793 S.W.2d at 676. This Court has no doubt that

---

**10.** *See* Blood Decl., Ex. 40 (containing firm résumés).

if the shoe were on the other foot and Great Southern were the plaintiff, Great Southern would be adamant that the law of Texas governed the contracts at issue. Nevertheless, a thorough legal analysis is required.

This Court is required to apply the choice of law analysis governing in the state where it sits, Texas. *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Texas follows section 188 [11] and section 6 [12] of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS (ALI 1971). *DeSantis*, 793 S.W.2d at 679. These sections result in what is known as the "most significant relationship" test. *DeSantis*, 793 S.W.2d at 677–679. In *DeSantis*, Texas Supreme Court found that the principles found in sections 187 and 6 of the Restatement are the rules of Texas for determining the applicable contract law. *Id.*

■ First, it is clear to this Court, contrary to Defendant's suggestions, that the contracts at issue were entered into in Texas, not the homes of its consumers. It is the most basic tenet of contract law that a contract consists of offer, acceptance, and consideration. The documents signed by the Plaintiffs were nothing more than offers. It is common knowledge that an insurance policy does not issue until it is received in the home office and the underwriting department approves it. "There is no contract unless and until the application for insurance is accepted by the insurance company." *Ingl-*

*ish v. Prudential Ins. Co. of America*, 928 S.W.2d 702 (Tex.App.—Houston[1st Dist.] 1996); *Walker v. Federal Kemper Life Assurance Co.*, 828 S.W.2d 442, 449 (Tex.App.—San Antonio 1992); *American Life Ins. Co. v. Nabors*, 124 Tex. 221, 76 S.W.2d 497, 500 (Com.App.1934). Therefore, the Plaintiffs sent an offer of contract to Great Southern, which then decided whether or not to accept that offer. If they accepted the offer, they did so in Texas.

However, Defendant argues that this court is bound to apply the law of the transferor jurisdictions. *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J.1997) (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990)). Defendant appears to be correct, but the analysis is no different. Applying any of the theories mentioned by the Defendant, *lex loci contractus* or *lex loci delecti* (discussed below), the Court reaches the same conclusion. The contracts were all entered into in Texas, not the various transferor states. Defendant's argument of *lex loci contractus* [13] does not stand close scrutiny.

Equally, any injury to the Plaintiff occurred in Texas, not the consumer's home. The policy premiums were payable at Great Southern's home office. The policy accountings were done in Great Southern's accounting offices, and the alleged decisions to

---

**11.** Section 188 of the RESTATEMENT states in full:

Law Governing in Absence of Effective Choice by the Parties: (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which with respect to that issue has the most significant relationship to the transaction and the parties under the principles stated in § 6.(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. These contracts are to be evaluated according to their relative importance with respect to the particular issue. (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will

usually be applied, except as otherwise provided in §§ 189–199 and § 203.

**12.** Section 6 of the RESTATEMENT states:

Choice of Law Principles: (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law. (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law (f) certainty, predictability, and uniformity of result, and (g) ease in the determination and application of the law to be applied.

**13.** *See* Def. Resp. to Pltf.'s Mot. for Class Cert. at 31.

breach the Texas contracts must have been made in the home offices of Great Southern. Clearly Defendant's concern about Alabama's rule of *lex loci delicti* [14] or "the place of the injury" is misplaced.

Furthermore, Texas clearly has a far greater interest in the outcome of this litigation than do other states. As Great Southern itself admits, this court is being asked to "gamble the fate of ... Great Southern." [15] Great Southern is a Texas corporation. Its net worth, by the Plaintiffs' calculations, is in excess of $1 billion dollars. It is headquartered in Texas and employs a significant number of Texans. Without question, Texas bears the most significant relationship.

As a result of the law of Texas, the law of the transferor jurisdictions, and the underlying policy, this court finds that Texas law governs the contracts at issue and certifies the breach of contract claim.

### *VIOLATION OF TEXAS BUS. & COMM. CODE §§ 17.46(a) AND (b)(5), (9) and (23)*

This Court finds that the Plaintiffs' second cause of action under the Texas Business & Commercial Code §§ 17.46(a) and (b)(5), (9) and (23) satisfies the requirements of Rule 23 and certifies this cause of action. These statutory sections make it illegal to engage in numerous types of deceptive trade practices. As already discussed above, Defendant's contracts are governed by Texas law. The contracts are the basis of Plaintiffs' second cause of action. Therefore, any actions certifiable under a breach of contract theory are certifiable under this cause of action. To the extent that a violation of these sections of the Texas Business and Commerce Code requires the element of reliance, that issue is discussed below and incorporated here by reference.

14. *Id.*

15. *Id.* at 36.

16. Section 145 of the RESTATEMENT reads:
(1) The rights and liabilities of the parties with respect to an issue in tort are determined by local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.(2) Contacts to be tak-

### *FRAUD, FRAUDULENT CONCEALMENT, AND DECEIT*

 This Court finds that the Plaintiffs' third cause of action: Fraud, Concealment, and Deceit, satisfies the requirements of Rule 23 and certifies this cause of action. Similarly to the choice of law issue governing the Defendant's contracts, Texas law follows the RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (ALI 1971).[16] *Gutierrez v. Collins*, 583 S.W.2d 312, 318–19 (1979). Much like section 188, section 145 adopts the "most significant relationship" test for tort claims. *Id.* Consequently, the analysis under section 145 closely tracks that of section 188. Again, for the purpose of certification, the Court accepts the Plaintiffs' allegations, as it must. *Miller*, 452 F.2d at 427–428. If a tort occurred, it occurred in Texas, not in the homes of Great Southern's customers. Each customer's account is maintained by and in Great Southern's home office. The harm alleged is caused to those accounts by Great Southern's corporate decision not to disclose the methods by which returns are calculated for those accounts. Great Southern is a Texas corporation, and the contractual relationship which underlies the entire suit is centered in Texas. Clearly, the case at bar satisfies the requirements of section 145 and thereby Texas law as well as the law of the transferring jurisdictions. This Court finds that the questions of law on this issue are sufficient to justify certification.

#### A. Reliance

 Fraud, however, presents a particular element which Defendant contends prevents certification by its mere presence: Reliance.

"Several courts have denied certification in consumer class actions where the alleged

en into account in applying the principles of § 6 to determine the law applicable to the issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship of the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

misrepresentations or fraud and reliance thereon have varied in each consumer transaction, thereby creating different elements of proof and different defenses for each class member.... [W]here the misrepresentations vary in each transaction, the individual issue predominates and the class action would disintegrate into numerous and individual trials. This does not mean, however, that claims of misrepresentation cannot be certified as class actions....[Such actions may be maintained] so long as class members are not required to individually litigate numerous and substantial questions to determine each member's right to recover subsequent to the ruling on the class action issues." *Wallace v. Smith Barney, Inc.*, 1997 WL 137412, *5 (Tex.App.—Beaumont (1997)) (citing *Vasquez v. Superior Court of San Joaquin Cty.*, 4 Cal.3d 800, 94 Cal.Rptr. 796, 801, 484 P.2d 964, 969 (1971)). Plaintiffs contend they are entitled to the presumption of reliance first enunciated in *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). In addition, Plaintiffs also hold forth *Vasquez* as supporting their theory. Plaintiffs are correct. Although *Ute* involved an interpretation of a federal securities statute, the "Supreme Court held that positive proof of reliance is unnecessary in cases involving primarily a failure to disclose." *Steiner v. Southmark Corp.*, 734 F.Supp. 269 (N.D.Tex. 1990) *reconsideration denied*, 739 F.Supp. 1087 (N.D.Tex.1990) (citing *Ute*, at 153, 92 S.Ct. 1456). *Ute* creates only a rebuttable presumption of reliance, which is applied to a defined, limited class of cases. *Finkel v. Docutel/Olivetti Corp.*, 817 F.2d 356, 359 (5th Cir.1987), *cert. denied*, 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988). The *Ute* presumption applies to cases in which the complaint alleges that the defendant failed to disclose any information relating to material facts the defendant was required to disclose. *Steiner*, 734 F.Supp. at 276.

*Vasquez* further supports Plaintiffs' contention. In *Vasquez*, the California Supreme Court, citing Williston, stated that " '[W]here representations have been made in regard to a material matter and action has been taken, in the absences of evidence showing to the contrary it will be presumed that the representations were relied on.' " *Vasquez*, at 814, 804, 973. (citing 12 WILLISTON ON CONTRACTS (3d ed.1970) 480). The *Vasquez* court went on to hold that "if ... the trial court finds misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class." *Id.* This would especially be the case where the home office was telling its agents and potential policy holders that their life insurance premiums would one day soon "vanish." Texas courts cite Vasquez with approval. *See Life Ins. Co. of the Southwest v. Brister*, 722 S.W.2d 764, 774 (Tex.App.—Ft. Worth (1986)); *Reserve Life Ins. Co. v. Kirkland*, 917 S.W.2d 836, 843 (Tex.App.—Houston[14th Dist] (1996)).

The only difference in the instant case and *Vasquez* is that Plaintiffs allege *omissions*, not misrepresentations. This court finds that to be of no consequence. In fact, it seems to this Court that where a party had no opportunity to learn the truth, a presumption of reliance is warranted to a greater degree than where there is a misrepresentation. As discussed earlier, Plaintiffs' allegations pertain to Great Southern's alleged omission of material actuarial, interest, and mortality expectations from the materials it provided its agents, not, as Defendant urges, misrepresentations at the point of sale. The Court concludes that this is in large part a non-disclosure case, to which it finds that the presumptions of *Vasquez* and *Ute* applies. The Court further finds that on the issue of reliance, common issues predominate.

**B. Fiduciary Duty**

Defendant also contends that in order for Plaintiffs to prevail on a fraud theory of recovery, they must show the presence of a duty to disclose. Defendants are correct. The Court finds that the Plaintiffs' case, if proven, rises to a fiduciary level. Therefore, the Defendant owed Plaintiffs a duty to disclose. Texas law specifically considers certain relationships fiduciary in nature. "For example, attorney/client, principal/agent, and partners." *UTAIC v. Mackeen & Bailey, Inc.*, 99 F.3d 645, 649 (5th Cir.1996). Relationships falling outside those defined as fiduciary are considered on a case by case

basis. *Id.* (citing *Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex.1962)). "A fiduciary relationship 'exists in all cases ... in which confidence has been reposed and betrayed.'" *UTAIC,* 99 F.3d at 649 (citing *Texas Bank & Trust Co. v. Moore,* 595 S.W.2d 502, 507 (Tex.1980)). Such a relationship is created where a "special confidence is reposed in another who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Id.*

▮▮▮ "The existence of a fiduciary relationship is a question of fact." *Floors Unlimited Inc. v. Fieldcrest Cannon, Inc.,* 55 F.3d 181, 188 (5th Cir.1995). Here the facts alleged by the Plaintiffs, if true, rise to the level of a fiduciary relationship. Additionally, this court cannot inquire as to the sufficiency of the Plaintiffs' causes of action. *Miller,* 452 F.2d at 427–428. For almost fifteen years, Great Southern marketed a series of complex interest sensitive life insurance policies which they claimed would also function as a relatively high return, cash value investment device. These devices were specifically designed to compete with other investment securities and came about as a result of significant competition from other market sectors for investors' money. Great Southern allegedly lured the Plaintiffs into an investment scheme which would provide them with low or no cost insurance while at the same time promising a significant retirement vehicle. Had the policies merely lost money as a result of the market place, there would be no issue. However, the Plaintiffs' allegations claim that the officers and directors of Great Southern knew that the promised returns were not possible and failed to disclose the true formulas used to determine policy returns. As a result, Great Southern's deceptive actions, if proven to be true, placed them in a position of a fiduciary in dealing with the purchasers of these select policies. *See, Floors Unlimited Inc.,* 55 F.3d at 188 (holding that fiduciary duties are a question of fact); *see also, UTAIC,* 99 F.3d at 649 (finding that a fiduciary duty exists in all cases ... in which confidence has been reposed and betrayed). If you take money on the promise of a particular return, knowing that such a return is not possible, and you don't bother to tell anyone, you have stepped into the shoes of a fiduciary and owe those from who you take money a higher duty of care. Therefore, taking Plaintiffs' claims as true, the Court finds that, under these alleged facts, Great Southern owed a duty to the Plaintiffs and that this cause of action is certified.

## UNJUST ENRICHMENT

▮▮▮ Plaintiffs also advance a cause of action under the equitable remedy of unjust enrichment. While Defendants do not specifically attack this cause of action, the Court believes that such a cause of action is not sustainable. Recovery for unjust enrichment is proper where a party obtained a benefit from a second party by fraud, duress or the taking of an undue advantage. *Heldenfels Bros. v. City of Corpus Christi,* 832 S.W.2d 39, 41 (Tex.1992). "As a general rule, a plaintiff ... [is] permitted to recover in quantum meruit [or unjust enrichment] only when there is no express contract covering those services...." *Truly v. Austin,* 744 S.W.2d 934 (Tex.1988). Here, the basis of the Plaintiffs' suit is a contract. However, because this Court is precluded from considering whether or not the Plaintiffs state a claim for which a legal remedy is available, *Eisen,* 417 U.S. at 178, 94 S.Ct. 2140, the Court finds that questions of law and fact predominate and certifies this cause of action at this time.

## DECLARATORY AND INJUNCTIVE RELIEF

▮▮ Plaintiffs' fifth cause of action is for Declaratory and Injunctive Relief. In order to sustain a cause of action for injunctive and declaratory relief, Plaintiffs must show that they have no adequate remedy at law and will suffer irrevocable injury without such relief. *Canteen Corp. v. Republic of Texas Properties, Inc.,* 773 S.W.2d 398, 401 (Tex. App.—Dallas 1989, no writ). "Generally, contractual rights are not enforceable by writs of injunction, since inadequate remedy at law and irreparable injury are rarely shown when a suit for damages for breach of contract is available." *Id.* Having already granted class certification for the Plaintiffs on breach of contract and fraud theories, the

Court doubts injunctive or declaratory relief in this case will prove to be appropriate. However, the *Eisen* preclusion again rears its head. *Eisen,* 417 U.S. at 178, 94 S.Ct. 2140. Therefore, the Court finds that there are questions of law and fact common to the Plaintiffs' fifth cause of actions and certifies it.

### ALTER EGO

Pursuant to the Court's Memorandum Opinion and Order filed September 15, 1999, this cause of action has been dismissed.

### REFORMATION

■ Plaintiffs' seventh cause of action sounds in equity. Reformation is available where there is the presence of mutual mistake or where there is a "unilateral mistake by one party and knowledge of that mistake by the other party ..." *Davis v. Grammer,* 750 S.W.2d 766, 768 (Tex.1988). As the contract, and the alleged omissions by the officers and directors of Great Southern are the central legal issues in this claim, the Court finds that the questions of law and fact are sufficiently common to support class certification. Plaintiffs' motion for class certification on its reformation cause of action is granted.

### NEGLIGENT SUPERVISION

Plaintiffs' eighth, and final, cause of action is negligent supervision. In a recent opinion, the Houston Court of Appeals found that Texas does not recognize a separate cause of action for negligent supervision. *Castillo v. Gared, Inc.,* 1 S.W.3d 781 (Tex.App.—Houston[1st Dist], August 12, 1999). As Texas law is applicable to the claims before the Court, it seems unlikely that Plaintiffs' claim of negligent supervision is appropriate, however, *Eisen* requires that where common questions of law or fact are predominate, as here, the court certify the class. *Eisen,* 417 U.S. at 178, 94 S.Ct. 2140. Furthermore, given the claim that the home office in Texas did not even tell the sales agents the "real deal" about the insurance products, a "negligent supervision" claim seems dubious in any event. In litigation, as at the Rodeo, he who tries to ride two horses will usually fall off both. At first glance, it may seem that a claim of negligent supervision requires delving into the specific sales pitches made by Great Southern's agents. This is not so. If, as Plaintiffs allege, Great Southern failed to inform its agents in any way as to the true calculation methods for the disputed Policies, no inquiry into individual sales practices should be warranted. Therefore, the Court finds that common questions of law and fact predominate and Plaintiffs' motion for certification for negligent supervision granted.

### CONCLUSION

Having found that the requirements of Rule 23(a) and (b)(3) are satisfied, the court certifies the following class:

All persons or entities who have or had at the time of termination an ownership interest in excess interest whole life an/or universal life insurance policies (the "Policies") issued by Great Southern from and after January, 1982 through December 31, 1997 (the "Class Period"). Excluded from the class are the defendants, their officers, directors and controlling persons.

The Court reiterates its continuing jurisdiction over this class certification. Although the eight causes of action in their complaint are like a shotgun blast, the vast majority of Plaintiffs' allegations are based on the omission theory, and the Court has analyzed them under that presumption. Should the Plaintiffs attempt to now shift gears and rely on statements as opposed to the lack thereof, this court would be required to revisit the issue of class certification.

### NOTICE.

Counsel for all parties are directed to confer for the purpose of agreeing upon a proposed form of notice to the class, as contemplated by FED.R.CIV. 23(c)(2). If counsel cannot reach agreement, each party may submit his/her/its own version. The proposed notice should be submitted to the court within thirty (30) days of the date of this order.