Filed 11/27/17

# CERTIFIED FOR PARTIAL PUBLICATION*

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| KRYSTAL FLORES, | B268271 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VC063221) |
| v. | |
| SOUTHCOAST AUTOMOTIVE LIQUIDATORS, INC., et al., | |
| Defendants and Appellants. | |

APPEAL from judgment of the Superior Court of Los Angeles County, Brian F. Gasdiar, Judge.  Affirmed.

Madison Harbor, Jenos Firouznam-Heidari, for Defendants and Appellants.

---

* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts III. and IV. of the discussion.

Law Offices of Robert B. Mobasseri, Robert B. Mobasseri, David A. Cooper, Amy L. Hajduk, Plaintiff and Respondent.

───────────────────

A car dealer and a lender appeal from a judgment awarding damages to a consumer for fraud and imposing an injunction on dealer's advertising under the Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200 et seq.). In the published portion of this opinion, we hold that an appropriate correction offer under the Consumers Legal Remedies Act (CLRA; Civ. Code, § 1750 et seq.)[1] does not prevent a consumer from pursuing causes of action for fraud and violation of the UCL based on the same conduct, because the remedies are cumulative. In the unpublished portion of the opinion, we conclude that the parties presented the cause of action for violation of the UCL to the trial court for a decision, and there was substantial evidence supporting the award of attorney fees under Code of Civil Procedure section 1021.5. Accordingly, we affirm.

───────────────

[1] All further statutory references are to the Civil Code unless otherwise stated.

# FACTS AND PROCEDURAL BACKGROUND

## Car Purchase and Repair

Defendant and appellant Southcoast Automotive Liquidators, Inc., doing business as Discount Auto Plaza (Dealer), publishes print advertisements on Wednesdays that advertise low prices for specific cars to attract customers to the dealership. Small print at the bottom of the advertisements states that the price expires at 12:00 p.m. on the day of publication. A customer who calls before noon to inquire about a car in an advertisement will be quoted the sale price. If the customer arrives at the dealership in the afternoon, the advertisement has expired and the car is sold for full price. Dealer also posts the advertisements online for about three hours. The advertisements on the internet do not contain expiration information and are simply taken down after three hours.

In April 2013, plaintiff and respondent Krystal Flores wanted to buy her first car. She saw Dealer's advertisement on the internet for a black 2009 Dodge Charger for $9,995. She printed the advertisement and asked her parents to call the phone number on it the next day to ask questions. Her mother called and spoke with a male employee named Sergio, who said the car had 42,000 miles and was in

excellent condition.[2]  Her mother asked if he could go any lower on the price and he said he might be able to drop the price to $9,000.  Flores waited an hour and had her father call to see if he got the same answers.  A female employee said the car had 42,000 miles on it.  Plaintiff's father explained that they were going to drive an hour and a half to see the car, so he needed her to be honest and not waste their time.  She said there were no mechanical issues with the car.

The next day, Flores, her mother, and her sister drove from Oxnard to South Gate to view the car.  Upon arriving, they asked for Sergio.  A salesperson falsely responded that he was Sergio.  Flores showed him the advertisement from the internet.  He showed her a black 2009 Dodge Charger with body damage and mileage of 107,000.  He said it was the only black Charger on the lot, but the Dealer could repair the damage.  Flores was very excited to purchase a car and thought it might still be worth buying.  They went inside to discuss the paperwork.  Flores's mother recognized the voice of another salesperson as the real Sergio.  He said the price of $9,000 was for a cash payment, so Flores's price would be the advertised price of $9,995.

Sergio told the assistant manager that Flores wanted to buy the Charger.  The assistant manager called the manager and asked what he wanted to sell the Charger for,

_____

[2] Sergio's last name is not provided in the record on appeal.

4

then put the number in the paperwork as the total cash price.  Salesperson Maria Guadalupe Jauregui assisted Flores with the paperwork for the purchase, bringing each document out from the printer.  While Flores completed the paperwork, a fight broke out between the male salespeople over credit for the sale, and the police responded.

One document listed the selling price as $16,995.  Flores's mother noticed that it stated the amount financed was $17,401 and asked why the document did not say $9,995.  Jauregui said not to worry about it, because they were just throwing numbers out and that number would not stay.  Flores signed an optional gap insurance contract for $895 without reading it or receiving any explanation.  The lender was defendant and respondent Veros Credit, LLC (Lender).

On the drive home, Flores noticed a tire warning light was on.  After that, the engine light went on.  Flores brought the car to a mechanic the next day and got a list of repairs that were needed.  She called Jauregui and told her that the car was going to overheat.  Jauregui said to bring it to Dealer with the list of repairs and it would take three days to fix.  Flores brought the car with the repair list.  She called Jauregui each day to ask if the car was ready.  When Jauregui stopped answering her phone, Flores began texting her.

When Flores returned to Dealer to pick up her car, Jauregui came outside.  She said Dealer had not been honest with either of them and not to pay any more money.  Flores

5

took the car back to the mechanic immediately, who said the repairs had not been made.  The check engine light continued to indicate, and the car often failed to start.

**Demand Letter and Legal Action**

On May 31, 2013, attorney Amy Hajduk sent a letter on behalf of Flores to Dealer.  She described the advertisement for the car and the conversations that Flores's family had with Dealer's salespeople.  The letter stated that when Flores questioned the price discrepancy in the sales contract, Jauregui said to disregard the numbers.  Jauregui said she would switch the financing company in six months and the price would go down $11,000.

Hajduk asserted that Dealer's acts constituted unfair methods of competition and/or unfair or deceptive acts in violation of the CLRA.  Flores demanded Dealer remedy the violations within 30 days by consenting to the entry of a specific injunction preventing any further predatory acts against the public.  The injunction would prohibit Dealer from continuing to violate CLRA provisions set forth in the letter and/or engaging in the practices against Flores and other members of the public.  She also demanded that Dealer return all the funds that she had paid, and pay incidental, consequential, and actual damages that she had suffered due to Dealer's violations of the CLRA.  Flores further demanded payment of her legal costs and attorney fees.

On June 7, 2013, Flores filed a complaint against Dealer and Lender alleging several causes of action, including violation of the CLRA, violation of the UCL, fraud, violation of the Song-Beverly Consumer Warranty Act (Song-Beverly Act; Civ. Code, § 1790 et seq.), and violation of the Magnuson-Moss Consumer Warranty Act (Magnuson-Moss Act; 15 U.S.C. § 2301 et seq.). Flores sought an injunction under the CLRA. She alleged unfair, unlawful, and fraudulent conduct in violation of all three prongs of the UCL, and sought an award of attorney fees under Code of Civil Procedure section 1021.5.

On June 25, 2013, Dealer's counsel called Flores's counsel and offered complete rescission of the purchase agreement with no offset, plus $1,500 for incidental costs. Dealer was willing to negotiate the amount for incidental costs as long as Flores provided additional receipts for incidental damages. Flores's attorney stated that Flores required $15,000 for civil penalties and attorney fees.

On July 3, 2013, Dealer's counsel wrote to Flores's counsel and denied Flores's claims. Dealer noted that the price stated in the print advertisements expired at 12:00 p.m. on the day of publication and was subject to approved credit. Flores did not purchase the car on the day that the advertisement was published. Dealer offered to fully rescind the contract, refund all payments, and provide an additional $1,500 for incidental costs. In exchange, Flores would have to return the car in substantially the same condition as she received it. If Flores rejected the offer, Dealer would deposit

7

with the court the amount that Dealer believed to be a full remedy and seek a determination that it was the prevailing party entitled to fees and costs, including attorney fees, for being forced to respond to a complaint after a full remedy was offered.

Flores rejected the offer because she did not believe it compensated her attorneys. On September 9, 2013, Dealer and Lender filed an answer containing a general denial to the allegations of the complaint and asserting affirmative defenses. On February 19, 2015, Flores filed an ex parte motion for permission to file an amended complaint seeking damages under the CLRA. The proposed amended complaint continued to seek an injunction against violations of the CLRA, but also sought restitution, actual damages, and punitive damages.

A bench trial began on April 1, 2015. In closing argument, Flores's attorney David Cooper argued that the cause of action under the CLRA focused on deceptive trade practices, specifically, Dealer's deceptive online advertising that failed to mention any expiration and Dealer's gap insurance practices. Flores sought a wide range of relief, including an injunction to prevent this type of advertising. He added, "The UCL claim in cause of action number 2 is largely overlapping the CLRA claim, cause of action number 1, in that we're seeking injunctive relief. So, the same argument would be made as to that, an order enjoining the future behavior of the dealer in so far as they are attempting to sell cars at prices great[ly] beyond the advertised price

8

merely because someone comes in at noon -- or 12:01, instead of noon."  Cooper noted that the settlement offer from Dealer did not address the request for an injunction.

In response, Dealer and Lender's attorney argued that correction offers under the CLRA do not need to include an injunction to be reasonable.  "With regard to the claim for an injunction under both, really, the CLRA and UCL, it's not appropriate here.  An injunction is not appropriate where a plaintiff seeks legal remedies."  He argued that equitable remedies were not available because Flores could be made whole by her legal remedy.  He added, "Finally, with regard to the UCL and the equitable relief sought therein, it's a [dependent] cause of action.  There has to be some sort of independent wrong.  We haven't seen that here.  All that is going to happen is it's going to stifle advertising and tell dealerships not to give deals."  He asked the court to find that there was no violation of the CLRA, or if there was, it was remedied by the prelitigation offer; that the UCL did not apply because Flores had sought legal damages and there had been no evidence of a scheme that authorized the court to impose an injunction to enjoin ongoing conduct; and the elements for fraud were not met.

The trial court ruled on April 2, 2015, that Dealer made a valid settlement offer to resolve the situation in good faith, and therefore, damages were not justified as to either defendant for violation of the CLRA.  The court also found in favor of Dealer and Lender on the cause of action for fraud.  However, the court found violations of the UCL, Song-

Beverly Act, and the Magnuson-Moss Act based on breach of warranty. The court granted judgment against Dealer for general damages of $15,409.95, plus civil penalties of $23,114.93. The court granted judgment as against Lender in the amount of $12,491.52, which represented Lender's joint liability. The court granted rescission of the purchase contract and ordered the car returned. The court also granted a limited permanent injunction prohibiting Dealer from advertising any vehicle for sale in print or on the internet without clearly stating the expiration date and time of any special or reduced price. The court found Flores was the prevailing party. On April 21, 2015, the trial court entered judgment accordingly.

## Post-Judgment Proceedings

Flores filed a motion for an award of attorney fees of $80,927.25 under the Song-Beverly Act. Dealer and Lender opposed the motion. They also filed a motion to set aside and vacate the judgment on several grounds. Flores opposed the motion to vacate the judgment. Flores argued the trial court's finding that the correction offer complied with the CLRA only prevented liability for damages under the CLRA. She argued that after filing a successful action for injunctive relief, even if the defendant responds with an appropriate corrective offer as to damages, the plaintiff is entitled to attorney fees.

A hearing was held on the attorney fees motion on June 9, 2015. The trial court took the matter under submission. A hearing was held on June 25, 2015, on the motion to set aside and vacate the judgment. The trial court revised its findings and the judgment. The court noted that injunctive relief, rescission, and restitution were available under the UCL. The court found an injunction was proper to enjoin unfair competition under the UCL, so it did not change the portion of the judgment awarding injunctive relief under the UCL. The court reviewed its analysis of the CLRA cause of action in favor of Dealer and Lender and declined to change its ruling. The court noted that the remedies of the CLRA are cumulative of other types of relief. The court reversed its ruling under the Song-Beverly Act, because there had been only one attempt to have Dealer repair the car, and therefore, the court found no liability under the Song-Beverly Act or Magnuson-Moss Act.

The trial court also reconsidered its findings on the fraud cause of action. Fraudulent misrepresentations had been made about the car in telephone conversations to induce Flores to drive to the dealership, which violated the CLRA and the UCL. Jauregui misrepresented the finance agreement when she told Flores's mother that Dealer was simply throwing numbers out and would rewrite the price later, which violated the CLRA and the UCL. Flores's assent to the contract was procured by a false promise, which vitiated her consent. Dealer represented that repairs were performed which had not been done, which was also a

11

violation of the Song-Beverly Act.  The court found in favor of Flores on the fraud cause of action and awarded general damages of $15,409.25.  The trial court determined $15,409.25 was an appropriate award of punitive damages.

The trial court also awarded attorney fees to Flores under Code of Civil Procedure section 1021.5.  The court found the injunction conferred a significant benefit upon the general public and was more than an ancillary benefit.  It alleviated the necessity and financial burden of private enforcement, and in the interests of justice, the fees should not be paid out of the recovery.  The court reduced the amount of fees to $24,278.18 to reflect the causes of action eligible for fees under the statute on which Flores had prevailed for the public benefit.  The court found 70 percent of the fees incurred were for Flores's private benefit and 30 percent were for the public benefit.  Costs were determined to be $3,922.50.

On August 20, 2015, the trial court entered its amended judgment in favor of Flores on the causes of action for violation of the UCL and fraud.  The court granted general damages of $15,409.95 against Dealer, plus punitive damages of $15,409.95, and damages of $12,491.52 against Lender, which represented the portion for which Lender was jointly liable.  The court also granted rescission of the purchase contract.  The court imposed a permanent injunction against Dealer enjoining advertising any vehicle for sale in print or on the internet without clearly stating the

12

date and time of any expiration.  The court awarded attorney fees of $24,278.18 and costs of $3,922.50 against Dealer.

Flores filed a notice of appeal from the August 20, 2015 judgment, but subsequently dismissed the appeal.  Dealer and Lender filed a cross-appeal from the August 20, 2015 judgment.

## DISCUSSION

### I. <u>**Standard of Review**</u>

We interpret a statute de novo.  (*In re J.P.* (2014) 229 Cal.App.4th 108, 122.)  As with any statute, "'"[w]e begin with the fundamental rule that our primary task is to determine the lawmakers' intent."'"  (*In re B.A.* (2006) 141 Cal.App.4th 1411, 1418.)  "Where statutory text 'is unambiguous and provides a clear answer, we need go no further.' [Citation.]  We observe, however, that the available legislative history and historical circumstances surrounding the enactment only buttress our reading of the statute. [Citations.]"  (*Scher v. Burke* (2017) 3 Cal.5th 136, 148.)  We may take judicial notice of reports by the Senate and Assembly Judiciary Committees.  (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 31–37 [collecting cases].)

## II. **The CLRA is Not an Exclusive Remedy**

Dealer and Lender contend the CLRA is the exclusive remedy for conduct encompassed by the CLRA, and Flores cannot recover for fraud or violation of the UCL based on the same conduct. They argue that the reasonable correction offer barred Flores from maintaining an action for damages under the CLRA, so she cannot maintain an action for damages based on the same conduct under another statutory or common law cause of action. This is incorrect.

The remedies of the CLRA are cumulative of other rights. The CLRA expressly states: "The provisions of this title are not exclusive. The remedies provided herein for violation of any section of this title or for conduct proscribed by any section of this title shall be in addition to any other procedures or remedies for any violation or conduct provided for in any other law. [¶] Nothing in this title shall limit any other statutory or any common law rights of the Attorney General or any other person to bring class actions. Class actions by consumers brought under the specific provisions of Chapter 3 (commencing with Section 1770) of this title shall be governed exclusively by the provisions of Chapter 4 (commencing with Section 1780); however, this shall not be construed so as to deprive a consumer of any statutory or common law right to bring a class action without resort to this title. If any act or practice proscribed under this title also constitutes a cause of action in common law or a violation of another statute, the consumer may assert such

14

common law or statutory cause of action under the procedures and with the remedies provided for in such law." (§ 1752.)

The CLRA prohibits enumerated unfair methods of competition and deceptive practices that result in the sale or lease of goods or services to a consumer, including in pertinent part: "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. [¶] . . . [¶] (9) Advertising goods or services with intent not to sell them as advertised. [¶] . . . [¶] (13) Making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions. [¶] . . . [¶] (16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not. [¶] (17) Representing that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction. [¶] . . . [¶] (19) Inserting an unconscionable provision in the contract." (§ 1770, subd. (a.).)

At least 30 days before filing an action for damages under the CLRA, the consumer must provide written notice of the particular violations of section 1770 and demand that the party responsible correct, repair, replace or otherwise rectify the goods or services. (§ 1782, subd. (a).) "Except as provided in subdivision (c) [relating to class actions], no action for damages may be maintained under Section 1780 if

15

an appropriate correction, repair, replacement, or other remedy is given, or agreed to be given within a reasonable time, to the consumer within 30 days after receipt of the notice." (§ 1782, subd. (b).) An action for injunctive relief under section 1770 may be filed without sending a notice under section 1782, subdivision (a). (§ 1782, subd. (d).) The consumer may amend his or her action for injunctive relief to include a request for damages after complying with section 1782, subdivision (a). (*Ibid.*)

Dealer's reasonable correction offer prevented Flores from maintaining a cause of action for damages under the CLRA, but it did not prevent her from pursuing remedies based on other statutory violations or common law causes of action based on conduct under those laws. We note that plaintiffs routinely plead fraud, UCL, and CLRA claims based on similar allegations. (See, e.g., *Miller v. Bank of America, NT & SA* (2009) 46 Cal.4th 630, 636; *Tucker v. Pacific Bell Mobile Services* (2012) 208 Cal.App.4th 201, 208–209; *Morgan v. AT&T Wireless Services, Inc.* (2009) 177 Cal.App.4th 1235, 1241.)

Dealer and Lender rely on two cases for the proposition that the conduct described in section 1770 is governed exclusively by the CLRA, despite the plain language of section 1752 stating that remedies under the CLRA are not exclusive. In *Vasquez v. Superior Court* (1971) 4 Cal.3d 800 (*Vasquez*), our Supreme Court concluded that class actions filed after the effective date of the CLRA which concern deceptive practices specified in the statute are governed

16

exclusively by the provisions of the CLRA and must follow the class action procedures specified in the act. (*Id.* at pp. 818–819.) The appellate court in *Outboard Marine Corp. v. Superior Court* (1975) 52 Cal.App.3d 30, relied on *Vasquez* to hold that if a cause of action alleged conduct specified in the CLRA, the procedures of the CLRA must be followed regardless of the nature of the cause of action pled in the complaint. (*Id.* at p. 35.) Both cases, however, were decided prior to the Legislature's amendment of section 1752 in 1975.

The CLRA has always stated that its provisions are not exclusive. The 1975 amendment affirmed the non-exclusive nature of the remedies by adding that the remedies "for violation of any section of this title or for conduct proscribed by any section of this title" were in addition to any other procedures or remedies "for any violation or conduct" provided under any other law. (Stats 1975, ch. 615, § 1, p. 1344.) The 1975 amendment made it clear that the CLRA's remedies for specified conduct were cumulative of a plaintiff's other common law and statutory causes of action.

We have taken judicial notice of the legislative history of Assembly Bill No. 1411 (1975-1976 Reg. Sess.), on our own motion. (Evid. Code, §§ 452, 459; *In re J.W.* (2002) 29 Cal.4th 200, 210.) The available legislative history, although not dispositive, supports our conclusion that the 1975 amendment to section 1752 repudiated the holding in *Vasquez* on this issue. The bill digests of both the Senate and Assembly Judiciary Committees stated that the *Vasquez*

17

court determined class actions filed in the future based on conduct described in the CLRA must comply with the CLRA even if the action was based on common law or another statute. (Sen. Com. on Judiciary, Bill Digest of Assem. Bill No. 1411 (1975-1976 Reg. Sess.); Assem. Com. on Judiciary, Bill Digest of Assem. Bill No. 1411 (1975-1976 Reg. Sess.).) The Senate Judiciary Committee bill digest commented that although the statement in *Vasquez* was dicta, the amendment "would abrogate this rule." (Sen. Com. on Judiciary, Bill Digest to Assem. Bill No. 1411 (1975-1976 Reg. Sess.).) The Assembly Judiciary Committee bill digest similarly commented that in response to *Vasquez*, the bill "reflects the original legislative intent regarding the non-exclusive nature of the Act." (Assem. Com. on Judiciary, Bill Digest to Assem. Bill No. 1411 (1975-1976 Reg. Sess.).)

Dealer and Lender also contend Flores cannot avoid the safe harbor provided for a reasonable correction offer under the CLRA by recasting her claim as a violation of the UCL. This is incorrect. Flores's UCL claim was based directly on evidence of fraudulent advertising practices and was not dependent on finding an underlying violation of the CLRA. The CLRA expressly states that the effect of a reasonable correction offer is to prevent the consumer from maintaining an action for damages under Civil Code section 1780, but the remedies of the CLRA are cumulative and the consumer may assert other common law or statutory causes of action under the procedures and with the remedies provided for in those laws.

18

III. **Cause of Action for Violation of the UCL**

For the first time on appeal, Dealer and Lender contend that there was no cause of action before the trial court for violation of the UCL, because Flores dismissed her cause of action and never amended the complaint to add a new cause of action under the UCL. We conclude this argument has been forfeited, because it was not preserved in the trial court and may not be raised for the first time on appeal.

### A. Additional Facts

On October 7, 2014, after the defendants had filed their answer, Flores dismissed her cause of action under the UCL without prejudice. When Flores sought permission on February 19, 2015, to file an amended complaint alleging damages under the CLRA, the proposed pleading included a UCL cause of action identical to the one that had been in the original complaint. Flores did not mention the UCL allegations in her motion. Dealer and Lender objected to the new allegations of damages under the CLRA, but did not mention the UCL cause of action. Flores's trial brief discussed the causes of action for fraud, false advertising, and statutory violations, but did not mention the UCL.

At the start of the bench trial on April 1, 2015, the court asked if the request to amend the first cause of action of the complaint was still under consideration. Flores's

19

attorney said it had been amended, filed and served, and there was a proposed stipulation to have the original answer deemed the answer to the amended complaint. Counsel for Dealer and Lender agreed. The court stated, "Then the answer that was previously filed by defendants will be deemed the answer [to] the new allegations contained within the first cause of action of the original complaint."

In closing argument, both parties discussed the application of the UCL to the facts. After trial, Dealer and Lender objected to Flores's proposed judgment, including that Flores was not entitled to an injunction under the UCL because she had an adequate legal remedy. They did not mention the UCL in their opposition to Flores's motion for attorney fees under the Song-Beverly Act. In their first motion to vacate the judgment, they argued that Flores was not entitled to an injunction under the UCL because a plaintiff with adequate legal remedies under the Song-Beverly Act cannot obtain an injunction under the UCL, and there was no evidence that she was likely to be harmed by Dealer's conduct in the future. They did not assert that there was no cause of action for violation of the UCL before the trial court for decision.

On September 15, 2015, Dealer and Lender filed a motion to set aside and vacate the amended judgment. They filed an amended motion that was substantially similar on October 27, 2015. In the motions, they argued Flores was not entitled to attorney fees under Code of Civil Procedure section 1021.5, because the action did not serve to vindicate

20

an important public right, and the injunction did not confer a significant benefit on the general public.  They also argued that the CLRA was the exclusive remedy for conduct encompassed by it, and Flores could not use the UCL to plead around the safe harbor provisions of the CLRA and the Song-Beverly Act.  The motion to vacate the amended judgment was not heard due to intervening events.

## B.  Application of Law

"'"Where the parties try the case on the assumption that . . . [an] issue . . . [is] raised by the pleadings, . . . neither party can change this theory for the purpose of review on appeal.' (6 Witkin, Cal. Proc. (2d ed.) Appeals § 281, p. 4269.)" (*Hilliard v. A. H. Robins Co.* (1983) 148 Cal.App.3d 374, 392.)  "The rule is well settled that 'When a cause is tried and evidence introduced on the theory that a material issue has been raised by the pleadings and the court renders judgment on that theory, the parties will not be allowed to say for the first time on appeal that there was no such issue.  [Citations.]  If a case is tried, submitted, and decided on a certain theory, a party will not be permitted to raise for the first time on appeal an objection that could have been obviated if it had been made in the court below.  [Citation.]  Errors not taken advantage of at the trial cannot be raised in the appellate court.  [Citation.]' (*Grimes v. Nicholson* [(1945)] 71 Cal.App.2d [538,] 543.)" (*Rubel v. Peckham* (1949) 94 Cal.App.2d 834, 836.)

"'In order to preserve an issue for appeal, a party ordinarily must raise the objection in the trial court. [Citation.] "The rule that contentions not raised in the trial court will not be considered on appeal is founded on considerations of fairness to the court and opposing party, and on the practical need for an orderly and efficient administration of the law." [Citations.] Otherwise, opposing parties and trial courts would be deprived of opportunities to correct alleged errors, and parties and appellate courts would be required to deplete costly resources "to address purported errors which could have been rectified in the trial court had an objection been made." [Citation.] In addition, it is inappropriate to allow any party to "trifle with the courts by standing silently by, thus permitting the proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable." [Citation.]'" (*Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 799–800, quoting *In re S.C.* (2006) 138 Cal.App.4th 396, 406–407.)

In this case, both parties argued the merits of the cause of action for violation of the UCL in their closing arguments, and the trial court made findings to determine the issue. After the trial, Dealer and Lender filed substantial objections to the form of the proposed judgment, including arguments about the UCL cause of action, but did not raise any objection based on whether the cause of action was pled in the complaint. They filed a motion to set aside the judgment that argued Flores was not entitled to a

permanent injunction under the UCL, but did not raise any issue related to the complaint. They filed an opposition to Flores's motion for attorney fees. They filed a second motion to set aside the judgment making several arguments about the applicability of the UCL without ever arguing that the cause of action was not before the trial court. Had Dealer and Lender objected to the UCL cause of action on this basis in the trial court, the court could have remedied the issue. Having failed to object at trial or in multiple post-judgment pleadings, Dealer and Lender have forfeited the issue on appeal.

IV. **Attorney Fees Award**

Dealer and Lender contend that there is no substantial evidence to support finding in favor of Flores on any of the three elements for an award of attorney fees under Code of Civil Procedure section 1021.5. We find no abuse of the court's discretion in the award of attorney fees.

Fees may be awarded under Code of Civil Procedure section 1021.5 when (1) an action "has resulted in the enforcement of an important right affecting the public interest," (2) conferred a significant benefit on the general public or a large class of persons, and (3) "the necessity and financial burden of private enforcement" make the award appropriate. (Code of Civ. Proc., § 1021.5; see *Serrano v.*

*Stefan Merli Plastering Co., Inc.* (2011) 52 Cal.4th 1018, 1026.)[3]

"With respect to necessity and financial burden, "'[a]n award on the 'private attorney general' theory is appropriate when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff 'out of proportion to his individual stake in the matter.' [Citation.]'" [Citation.]" (*Mejia v. City of Los Angeles* (2007) 156 Cal.App.4th 151, 157, fn. omitted (*Mejia*).)

"Whether the moving party has satisfied the statutory requirements so as to justify a fee award is a question committed to the discretion of the trial court; we review the ruling for abuse of discretion. [Citations.] An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's

---

[3] Code of Civil Procedure section 1021.5 provides in pertinent part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

24

decision exceeds the bounds of reason and results in a miscarriage of justice. [Citations.] This standard of review affords considerable deference to the trial court provided that the court acted in accordance with the governing rules of law. We presume that the court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise. [Citations.]" (*Mejia, supra*, 156 Cal.App.4th at p. 158.)

In this case, there was substantial evidence to support the trial court's findings. Flores's action resulted in the enforcement of an important right to be free of false and misleading advertising. In fact, Dealer and Lender argued against the necessity of an injunction on the ground that Flores was not likely to be taken in by their advertising practices again. The injunction primarily benefits members of the general public who would be otherwise misled by reliance on the advertised prices and predatory lending practices. The necessity and financial burden of private enforcement also made the award appropriate. There was no evidence that any public enforcement action had been taken to regulate Dealer's advertising practices. The private financial burden was disproportionate in this case as well. Flores had to risk her own recovery of damages by rejecting a reasonable correction offer in order to pursue injunctive relief to limit Dealer's predatory advertising practices for the benefit of the general public. The trial court appropriately limited the fee award. We find no abuse of discretion in the award of attorney fees in this case.

25

## DISPOSITION

The judgment is affirmed.  Respondent Krystal Flores is awarded her costs on appeal.


KRIEGLER, Acting P.J.

We concur:



BAKER, J.



DUNNING, J.*

---

* Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.