Filed 9/16/20  Fregoso v. Eat Club CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CRYSTAL FREGOSO, et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>EAT CLUB, INC.,<br><br>    Defendant and Appellant. | H046724<br>(Santa Clara County<br>Super. Ct. No. 18CV330433) |

This wage and hour putative class action was filed against defendant Eat Club, Inc. (Eat Club) by three former or current delivery employees, Crystal Fregoso, Truc Bui, and Adrianna Rodriguez, who seek to represent a class of similarly situated employees. Their first amended complaint described Eat Club as a business that provided corporate catering and food delivery services throughout California.  Plaintiffs and the putative class members worked or had worked at "distribution hubs/centers."  Plaintiffs' allegations include claims that Eat Club engaged in systemic violations of Labor Code provisions and Industrial Welfare Commission wage orders.  Plaintiffs are seeking, among other relief, to recover damages for unpaid compensation, prejudgment interest, various Labor Code penalties, and attorney fees and costs.  Plaintiffs are pursuing civil penalties under the Labor Code Private Attorneys General Act (PAGA) (Lab. Code, § 2698 et seq.) as well.[1]  For purposes of this appeal, we will refer to the entire lawsuit as a class action.

---

[1] A representative action under PAGA is not a class action.  (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 87; see *id*. at p. 80 ["Settlement of

Eat Club purports to appeal from two related precertification orders. The first order invalidated the mandatory arbitration agreements that the company had secured from putative class members after this class action lawsuit was filed. The trial court issued the order because it found that in obtaining those agreements, Eat Club had provided insufficient information concerning this lawsuit to putative class members. The second order required Eat Club to send a "curative notice" that, among other things, informed putative class members that the arbitration agreements were invalid and that those agreements could not be enforced by Eat Club.

Eat Club argues that the trial court's "decision to preemptively void hundreds of nonparty agreements . . . far exceeded the boundaries of class action jurisprudence." Plaintiffs raise a threshold issue of appealability as to both orders.

We now determine that neither of the challenged orders is appealable and that, consequently, we lack jurisdiction to review them on appeal. We decline Eat Club's suggestion that we alternatively treat the appeals as extraordinary writ petitions. We conclude that the appeals must be dismissed.

I

*Procedural History*

A complaint was filed on June 21, 2018.

A first amended complaint was filed September 21, 2018. It alleged eight causes of action: (1) failure to pay overtime wages; (2) failure to pay minimum wage; (3) failure to provide meal breaks; (4) failure to provide rest breaks; (5) failure to furnish timely and accurate wage statements; (6) failure to pay all wages due at discharge in a timely manner

---

individual claims does not strip an aggrieved employee of standing, as the state's authorized representative, to pursue PAGA remedies."].) PAGA actions "directly enforce *the state*'*s* interest in penalizing and deterring employers who violate California's labor laws." (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 387 (*Iskanian*).)

(waiting time penalties); (7) unfair practices under the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.); and (8) violation of PAGA (Lab. Code, § 2698 et seq.).

Plaintiffs filed an ex parte application for a protective order, scheduled to be heard on November 13, 2018. The plaintiffs asked the trial court to, among other things, (1) invalidate the arbitration agreements/class action waivers that Eat Club had obtained from putative class members; (2) require Eat Club to send a curative notice to putative class members; and (3) enjoin Eat Club from any further ex parte, precertification communications with putative class members concerning this class action litigation or "any arbitration agreement/class [action] waiver/release of claims until the court has the opportunity to rule on the issue of conditional certification of the class action." According to the application, on November 6, 2018, an HR employee of Eat Club informed putative class members who worked at an Eat Club hub that they must execute arbitration agreements within three days or be terminated.

In its opposition to plaintiffs' application, Eat Club disclosed the following: "On November 1st, 2nd, and 5th, 2018, the [c]ompany rolled out a mandatory arbitration agreement for employees that are 'drivers.' . . . [A]t the [c]ompany's various hubs in group meetings between November 1-5, 2018[,] . . . employees were given the arbitration agreement and told that signing the agreement was mandatory for continued employment and that the document needed to be signed by Friday, November 9, 2018. . . . Employees were also told that they had the option [(option 1)] to expand the arbitration agreement to cover claims that are being asserted in the instant [class action] lawsuit and that this would mean that they would be required to submit these claims to final and binding arbitration on an individual basis." Eat Club also indicated that those employees could elect not to expand the arbitration agreement to cover the claims in this lawsuit— option 2—but that they were required to choose one of those two options. Those who chose option 1 would receive compensation incentives, but those who chose option 2 would not. Eat Club acknowledged that the arbitration agreement contained a class

3

action waiver and that it "prohibit[ed] class or representative actions, including actions brought under local private attorney general statutes, unless such prohibitions are not allowed in the jurisdiction in question."[2]  Eat Club reported that when its opposition was prepared, "of the 360 employees presented with the agreement, 93 percent of them signed the arbitration agreement" and approximately 90 percent of the employees who had signed the agreement "opted to expand the arbitration agreement to cover the claims being asserted in [this] lawsuit."

The parties indicate that plaintiffs' ex parte application was heard on November 13, 2018.  Eat Club states in its brief that the trial court denied the application without prejudice to a properly noticed motion.

Plaintiffs then filed a motion for "curative action," specifically asking the court to (1) invalidate the arbitration agreements that Eat Club obtained from putative class members; (2) require Eat Club, at is own expense, to send corrective notices to putative class members stating that such agreements were invalid; and (3) issue a preliminary injunction and protective order that (a) required Eat Club to inform plaintiffs' counsel "prior to obtaining future releases, opt-outs, and/or class waivers from putative class members" and (b) enjoined Eat Club "from terminating any employee for refusing to sign any document that requires them to forfeit their right to participate in this action . . . ."

On February 4, 2019, following a hearing at which the parties did not contest the tentative ruling, the trial court filed a written order, adopting its tentative ruling.  The trial court agreed with Eat Club that "a general determination of the enforceability of the

---

[2] Under California law, "it is contrary to public policy for an employment agreement to eliminate [the choice of bringing a PAGA action] altogether by requiring employees to waive the right to bring a PAGA action before any dispute arises." (*Iskanian*, *supra*, 59 Cal.4th at p. 383.)  Such an agreement "may not be enforced. (Civ. Code, § 1668.)"  (*Ibid*.)  The Court of Appeals, Ninth Circuit has held that the *Iskanian* rule is not preempted by the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.).  (*Sakkab v. Luxottica Retail North America*, *Inc*. (9th Cir. 2015) 803 F.3d 425, 427.)

4

[arbitration] agreements, such as whether the agreements are unconscionable, [was] premature because there [was] not yet a motion to compel arbitration before [it]." The court nevertheless found that Eat Club had failed to provide enough information about this class action lawsuit in securing the arbitration agreements. Relying upon its authority to manage class actions and control communications with putative class members, the court invalidated the arbitration agreements that putative class members had been required to sign.

In its February 4, 2019 order, the trial court also (1) directed the parties to meet and confer about the content of a curative notice to inform the putative class members that the arbitration agreements were invalid because Eat Club had not provided them with sufficient information about this class action lawsuit and (2) required Eat Club to send the notice, at its own expense, to the putative class members.

The parties could not agree on the content of a curative notice.[3] On February 26, 2019, the trial court ordered Eat Club to send to all putative class members, on or before March 15, 2019, a curative notice prepared by the court. The court-ordered notice described this class action lawsuit. The notice informed delivery employees that the arbitration agreements that they had signed as a condition of continued employment were invalid because Eat Club had not provided sufficient information about this lawsuit and that the agreements could not be enforced by Eat Club. The notice also provided contact information for Eat Club's counsel and plaintiffs' counsel.

On March 8, 2019, Eat Club filed a notice of appeal from the two February orders.[4]

---

[3] Eat Club was unwilling to consider any alternative to its own proposed curative notice.

[4] The notice of appeal incorrectly stated that the first order was entered on February 6, 2019, which appears to be the date of the notice of entry of the order. We conclude that Eat Club's notice of appeal may be liberally construed to refer to the order entered February 4, 2019 since there is no indication that any plaintiff was prejudicially misled.

5

On appeal in this court, before the record or any briefing was filed, plaintiffs moved to dismiss the appeals. We denied the motion. We now revisit the issue of appealability.

## II

### *Appealability*

"The existence of an appealable judgment is a jurisdictional prerequisite to an appeal." (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126.) "A reviewing court has jurisdiction over a direct appeal only when there is (1) an appealable order or (2) an appealable judgment. [Citations.]" (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696 (*Griset*).) Even if plaintiffs had not raised the issue of appealability again in their respondent's brief, we would be "duty[-]bound to consider it on our own motion" because "the question of appealability goes to our jurisdiction." (*Olson v. Cory* (1983) 35 Cal.3d 390, 398.)

The Supreme Court has stated that "[a] trial court's order is appealable when it is made so by statute." (*Griset*, *supra*, 25 Cal.4th at p. 696.) Code of Civil Procedure[5] "[s]ection 904.1 directs that an appeal may be taken '[f]rom a judgment' (§ 904.1, subd. (a)(1)) and in its remaining subdivisions lists various specific additional appealable orders that stand as exceptions to the general rule." (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 756, fn. 3 (*Baycol*).)

Section 904.1, subdivision (a)(6) (hereafter 904.1(a)(6)) permits an appeal from "an order granting or dissolving an injunction, or refusing to grant or dissolve an injunction." A different statute allows an "aggrieved party" to appeal from an order "dismissing or denying a petition to compel arbitration." (§ 1294, subd. (a) (hereafter 1294(a)).) Eat Club invokes sections 904.1(a)(6) and 1294(a) to establish this court's appellate jurisdiction.

---

[5] All further statutory references are to the Code of Civil Procedure, unless otherwise provided.

Plaintiffs contend that the challenged orders are nonappealable interlocutory rulings. They argue that the orders cannot be regarded as injunctions because the trial court did not enjoin arbitration but only invalidated the arbitration agreements. Plaintiffs urge us to follow *Brown v. Upside Gading, LP* (2019) 42 Cal.App.5th 140 (*Brown*), which is somewhat analogous to this case.

In *Brown*, the trial court issued a precertification order that invalidated releases obtained by the defendant from putative class members—through what the court found to be "misleading, coercive and otherwise improper communications." (*Brown*, *supra*, 42 Cal.App.5th at p. 146.) The order required "(1) the parties to meet and confer regarding preparation of a corrective notice to be sent to the putative class members; (2) [the defendant] to refrain from communicating with putative class members about the lawsuit until the corrective notice [was] issued; and (3) [the defendant] to provide [the] plaintiffs' counsel with copies of the improperly obtained executed releases and contact information for the signatories." (*Ibid.*) The appellate court dismissed the appeal after finding that the order was " 'part and parcel of the class certification process and, as such, not appealable.' [Citation.]" (*Ibid.*) The court stated that "routine interim orders directed at litigation management in class action lawsuits are not generally appealable. [Citations.]" (*Id.* at pp. 145-146.)

In this case, the trial court issued an initial order similar in some respects to the order made in *Brown*, but, unlike *Brown*, the court did not issue an injunction or a protective order limiting communications with putative class members.[6] As indicated, the trial court in this case then issued a second order, which required Eat Club to send a curative notice to the putative class members, which informed them of the consequences of the court's first order.

---

[6] Eat Club was not aggrieved by the trial court's refusal to issue such an order. (See § 902.)

7

Civil Code section 525 defines an injunction as "a writ or order requiring a person to refrain from a particular act." However, an injunction "also may command a person to perform a particular act. [Citation.]" (*PV Little Italy, LLC v. MetroWork Condominium Assn.* (2012) 210 Cal.App.4th 132, 143 (*PV Little Italy*); see e.g. *Smith v. Smith* (1941) 18 Cal.2d 462, 465 [order "commanding petitioner to vacate the family home" was "in the nature of a mandatory injunction" because it "command[ed] the doing of an affirmative act"].) "[T]he general rule is that an injunction is prohibitory if it requires a person to refrain from a particular act and mandatory if it compels performance of an affirmative act that changes the position of the parties. [Citations.]" (*Davenport v. Blue Cross of California* (1997) 52 Cal.App.4th 435, 446-447.) "Whether a particular order constitutes an appealable injunction depends not on its title or the form of the order, but on ' "the substance and effect of the adjudication." ' (*In re The Clergy Cases I* (2010) 188 Cal.App.4th 1224, 1234.)" (*PV Little Italy*, *supra*, at pp. 142-143; see *Griset*, *supra*, 25 Cal.4th at p. 698.)

The February 4, 2019 order invalidating the arbitration agreements did not actually require Eat Club to do, or refrain from doing, any particular act, other than to meet and confer about the notice's content and send the notice, at its own cost. No one suggests that a meet-and-confer order is appealable, and, in any case, Eat Club is not challenging that aspect of the court's order.

"[T]he 'one final judgment' rule [is] a fundamental principle of appellate practice that prohibits review of intermediate rulings by appeal until final resolution of the case." (*Griset*, *supra*, 25 Cal.4th at p. 697.) In general, an intermediate determination in a class action lawsuit is reviewable upon appeal from the judgment (see § 906) and is not directly appealable. (See *Green v. Obledo* (1981) 29 Cal.3d 126, 149, fn. 18 [partial decertification order was not directly appealable]; *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 806-807 & fn. 4, superseded by statute on another ground as stated in *Flores v. Southcoast Automotive Liquidators, Inc.* (2017) 17 Cal.App.5th 841, 851

8

[where trial court sustained demurrers to the class action allegations of first cause of action but not second cause of action, order dismissing first cause of action as a class action was not appealable]; but cf. *Baycol*, *supra*, 51 Cal.4th at p. 754 ["death knell" doctrine "renders appealable only those orders that effectively terminate [all] class claims but permit individual claims to continue"].) Further, an order requiring a party to give notice of an intermediate determination in a class action lawsuit is interlocutory and not appealable. (See *Steen v. Fremont Cemetery Corp.* (1992) 9 Cal.App.4th 1221, 1227-1230 [order issued after class action certification that directed service of notice of class action to absent class members and that allocated the cost of preparing such notice was an nonappealable, interlocutory order]; see also *Farwell v. Sunset Mesa Property Owners Assn., Inc.* (2008) 163 Cal.App.4th 1545, 1547-1548.)

While the February 4, 2019 order, if not overturned, appears to doom to failure a subsequent petition to compel arbitration, the order did not enjoin or mandate any conduct with respect to bringing such a petition. Accordingly, it cannot be reasonably regarded as an appealable order granting an injunction. (See § 904.1(a)(6).) Neither was it an appealable order denying a petition to compel arbitration under the California Arbitration Act (§ 1280 et seq.) or the FAA. (See §§ 1281.2,[7] 1294(a).) The trial court

---

[7] Section 1281.2 provides that absent specified exceptions, "[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists." In *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University* (1989) 489 U.S. 468 (*Volt*), the United States Supreme Court held that the application of section 1281.2, subdivision (c), to stay arbitration was "not pre-empted by the [FAA] . . . where the parties ha[d] agreed that their arbitration agreement will be governed by the law of California." (*Volt*, *supra*, at p. 470.) While "[t]here is no federal policy favoring arbitration under a certain set of procedural rules" (*id*. at p. 476), where the FAA applies, the State of California "cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 351.)

9

itself recognized that there was "not yet a motion to compel arbitration before the [c]ourt."

The February 26, 2019 order required Eat Club to in effect give notice, as directed, of an intermediate determination in this class action lawsuit. Thus, it was not appealable for the reasons already discussed.

Citing *International Film Investors v. Arbitration Tribunal of Directors Guild* (1984) 152 Cal.App.3d 699 (*IFI*), Eat Club argues that it "has an independent right to appeal under . . . section 1294(a), allowing an aggrieved party to appeal from an order denying arbitration." In *IFI*, a petition for a writ of prohibition was filed in the superior court to prevent the commencement of arbitration proceedings. (*Id*. at p. 701.) The petitioner appealed from the denial of the petition. (*Id*. at p. 702.) The "respondents and [the] real parties contend[ed] that the order denying the petition was tantamount to an order compelling arbitration and thus was not an appealable order. [Citations.]" (*Id*. at pp. 702-703, fn. omitted.)

The appellate court in *IFI* understood that an order compelling arbitration is not appealable but that an order denying a petition to compel arbitration is appealable under section 1294. (*IFI*, *supra*, 152 Cal.App.3d at p. 703.) The court first determined that a writ of prohibition "does not lie to restrain the acts of an arbitrator." (*Id*. at p. 704.) But the court chose to "consider the effect of treating the petition as one for injunction [to prevent arbitration]." (*Ibid*.) The court observed that "[p]ermitting an appeal from a judgment *granting* a petition for an injunction under such circumstances would of course be consistent with the spirit and purpose of . . . section 1294" (*ibid*.), whereas permitting an appeal from a judgment denying a petition to enjoin arbitration would do "violence to the spirit and purpose of . . . section 1294" because such a denial would be "the practical equivalent of an order to compel arbitration." (*Ibid*.) Under this reasoning, the appellate court concluded that the order denying relief was not appealable, and it dismissed the appeal. (*Id*. at p. 706.)

We understand Eat Club to be arguing that the trial court's order invalidating the arbitration agreements signed by putative class members was tantamount to, or the practical equivalent of, an order denying a petition to compel arbitration, which is appealable under section 1294(a). In contrast, plaintiffs maintain that the order invalidating the agreements cannot be deemed the "functional equivalent" of an order denying a petition to compel arbitration because (1) the trial court was acting under its inherent authority to regulate class action proceedings, not under its statutory authority with respect to arbitration; and (2) when the court acted, there was "no imminent prospect of arbitration" and no motion to compel arbitration before it.

In *MKJA, Inc. v. 123 Fit Franchising, LLC* (2011) 191 Cal.App.4th 643 (*MKJA*), a California trial court "entered an order granting [the] defendants' motion to stay the action pursuant to section 1281.4" (*id*. at p. 649) because a petition to compel arbitration had been filed in Colorado. (*Ibid*.) After a Colorado court had granted the defendants' petition to compel arbitration (*id*. at p. 650), the California court granted the plaintiffs' motion to lift the stay of the action because "the plaintiffs could not afford to pay the costs associated with arbitration." (*Id*. at p. 647.) The court also declared "the arbitration provisions unenforceable and/or unconscionable." (*Id*. at p. 652.)

In *MKJA*, the appellate court concluded that "the trial court's order declaring the arbitration provisions unenforceable [was] appealable pursuant to section 1294, subdivision (a) as the functional equivalent of an order denying a petition to compel arbitration." (*MKJA, supra*, 191 Cal.App.4th at p. 655.) The court reasoned that "if the trial court's order were not appealable, [the defendant] would be forced to proceed with litigation to a final judgment, and its alleged right to arbitrate would thus be frustrated." (*Ibid*.)

Other courts have also held certain orders to be "the functional equivalent" of an order denying a petition to compel arbitration and therefore appealable under section 1294(a). (See e.g. *Schimmel v. Levin* (2011) 195 Cal.App.4th 81, 86 [after

11

disqualifying defendants' counsel, court struck defendants' motion to compel arbitration without prejudice to refiling by new counsel; order striking motion to compel arbitration was found to be appealable as the functional equivalent of an order refusing to compel arbitration]; *Henry v. Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94, 98-99 [where the defendant had initiated arbitration proceedings with the American Arbitration Association, a subsequent court order staying arbitration was found to be appealable as the functional equivalent of an order refusing to compel arbitration].)  But in distinguishable circumstances, the Court of Appeal, Second District, Division 5 has found that certain orders were *not* the functional equivalent of an order denying a petition to compel arbitration.  (See *Gastelum v. Remax Internat., Inc.* (2016) 244 Cal.App.4th 1016, 1020-1023 [although the trial court granted a defendant's motion to compel arbitration and stayed litigation pending the arbitration, the arbitration proceedings ended when the defendant did not pay arbitration filing fees; the court's subsequent order lifting the litigation stay was not appealable as the functional equivalent of an order dismissing or denying a petition to compel arbitration]; *Wells Fargo Bank*, *N.A. v. The Best Service Co., Inc.* (2014) 232 Cal.App.4th 650, 653-655 [an order denying the defendant's motion to stay litigation pending arbitration was not the equivalent of an order denying a petition to compel arbitration where there was no pending arbitration and the motion was not accompanied by a petition to compel arbitration].)

Appellate courts must take care not to overextend the principle of functional equivalency.  As the Supreme Court has repeatedly stressed, the right to appeal is wholly statutory.  (*Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5; see *Griset*, *supra*, 25 Cal.4th at p. 696.)  Eat Club has not shown that when the trial court issued the challenged orders in this case, arbitration of any claim raised in this lawsuit was pending in another forum.  Those orders did not stay arbitration pending the outcome of this lawsuit; neither did they lift a stay of the action while arbitration was pending. There was no pending petition to compel arbitration.  Further, in issuing those orders, the

12

court did not consider arbitrability or decide whether the arbitration agreements were unconscionable, hence unenforceable, under substantive law. The trial court was relying entirely on its authority to manage the conduct of class actions. Under the circumstances, we conclude that neither of the challenged orders was the functional equivalent of an order denying a petition to compel arbitration. Consequently, those orders were not appealable under section 1294(a).

It is our conclusion that the orders from which Eat Club purports to appeal are not appealable. Accordingly, on our own motion, we dismiss the appeals. (See *Cole v. Rush* (1953) 40 Cal.2d 178, 178; *Collins v. Corse* (1936) 8 Cal.2d 123, 124.)

DISPOSITION

The appeal from the February 4, 2019 order and the appeal from the February 26, 2019 order are dismissed. Eat Club shall bear costs on appeal.

13

_____

ELIA, J.


WE CONCUR:




_____

GREENWOOD, P.J.




_____

BAMATTRE-MANOUKIAN, J.




*Fregoso et al. v. Eat Club, Inc.*
H046724